**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 11 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

GARY RANDALL HOXSIE,

        Petitioner - Appellant,

    v.

DARELD KERBY, Warden; TOM
UDALL, Attorney General for the
State of New Mexico,

        Respondents - Appellees.

No. 95-2207

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D. Ct. No. CIV-89-573-JB)**

Joseph W. Gandert, Assistant Federal Public Defender, Albuquerque, New Mexico,
appearing for the Appellant.

Bill Primm, Assistant Attorney General (Tom Udall, Attorney General for the State
of New Mexico, with him on the brief), Santa Fe, New Mexico, appearing for the
Appellees.

Before TACHA, HENRY, and BRISCOE, Circuit Judges.

TACHA, Circuit Judge.

Gary Randall Hoxsie, an inmate at the Central New Mexico Correctional Facility, appeals an order of the district court adopting the magistrate judge's Findings and Recommended Disposition and dismissing Hoxsie's petition for habeas corpus pursuant to 28 U.S.C. § 2254. The magistrate found that Hoxsie's claims of prosecutorial misconduct and ineffective assistance of counsel were without merit and denied his request for an evidentiary hearing. We construe Hoxsie's notice of appeal as an application for a certificate of appealability. See Fed. R. App. P. 22(b); Lennox v. Evans, 87 F.3d 431, 434 (10th Cir. 1996), cert. denied, No. 96-6621, 1996 WL 665079 (U.S. Jan 13, 1997). Because we find that Hoxsie "has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), we grant the certificate and exercise jurisdiction pursuant to 28 U.S.C. § 2253. We affirm.

## BACKGROUND

In 1983, a New Mexico state jury convicted Hoxsie of first-degree murder, armed robbery, and conspiracy to commit armed robbery, resulting in a sentence of life imprisonment. The testimony and evidence proffered at trial showed that in the early morning of October 23, 1982, Hoxsie (the defendant) and John Waters (Hoxsie's co-defendant) left their apartment to look for Gary Suiter (the victim). Suiter owed Hoxsie $275 in gambling debts. Hoxsie and Waters found Suiter at a local restaurant. The three left the restaurant in Hoxsie's pick-up truck and

headed in the direction of Rio Rancho, New Mexico. Hoxsie drove to the north beach area of the Rio Grande River, a remote, wooded area that Hoxsie frequented. Hoxsie, who commonly carried a .357 Magnum in his truck, got into a heated argument with Suiter concerning the gambling debt. Suiter was shot with the .357 at close range in the hand, chest, and head. His jewelry was removed and his body was dragged about thirty feet from the road to a bushy area near the river. Hoxsie claimed that Waters killed Suiter. Waters, on the other hand, claimed he stayed in the truck and Hoxsie killed Suiter. Hoxsie and Waters got back in the truck and drove away. Within days of the murder, Hoxsie contacted several people about selling Suiter's jewelry. The authorities arrested Hoxsie in possession of the victim's jewelry.

The record indicates that Hoxsie offered three different versions of Suiter's death. First, in his pretrial statement to the police, Hoxsie stated that Waters wanted to steal Suiter's jewelry but that he would not help Waters. According to the statement, Waters then shot the victim. Second, in his opening statement to the jury, Hoxsie's trial counsel set up a "defense of another" theory and told the jury that the evidence would show that Waters shot Suiter to protect Hoxsie from attack. At trial, however, neither Hoxsie nor Waters testified consistent with this theory, which was clearly inconsistent with the forensic evidence admitted at trial showing close range shots to Suiter's head and chest. At trial, Hoxsie admitted

that the story had been "concocted." Instead, Hoxsie offered a third version of the events, testifying that after he and Suiter began to argue, Suiter "took a swing" at him, at which time Waters left the truck and approached Hoxsie to find out what was happening. Hoxsie testified that he told Waters to stay out of the argument, but that some time later when Hoxsie was not looking, Waters shot Suiter at close range.

During trial, Hoxsie's trial counsel called Waters as a witness. Waters's testimony ultimately implicated Hoxsie. In his pretrial statement, Waters seemed confused and claimed to remember nothing about the night, admitting that he had been drinking and was "messed up" and "in a daze." Several of his statements seemed to implicate himself. At one point, for example, he stated, "I don't remember. All of a sudden, all this commotion started. I had a gun in my hand." At trial, however, Waters testified that he remained in the truck and did not see what happened, but that Hoxsie handed him the gun and told him to put it under the seat.

After the jury convicted Hoxsie on all charges in the indictment, Hoxsie appealed to the New Mexico Supreme Court. He alleged that prosecutorial misconduct deprived him of a fair trial. Specifically, Hoxsie alleged that the prosecution: (1) asked many repetitive and leading questions, (2) sought to impeach Hoxsie by reading from an inadmissible transcript, (3) introduced dozens

of repetitive and gruesome photographs, (4) acted improperly in presenting the testimony of the victim's mother, and then allowing her to remain in the courtroom for the remainder of the trial, (5) noted during cross-examination of Hoxsie and closing argument that Hoxsie testified after he had heard all the testimony against him, and (6) committed cumulative error based on the above alleged misconduct. The New Mexico Supreme Court did not address the first two claims because Hoxsie did not include them in his docketing statement. The court, however, rejected Hoxsie's remaining grounds for relief, including cumulative error. See State v. Hoxsie, 677 P.2d 620, 622 (N.M. 1984), overruled on other grounds by Gallegos v. Citizens Ins. Agency, 779 P.2d 99 (N.M. 1989).

Hoxsie then filed this federal petition for writ of habeas corpus, challenging his state conviction on the basis of prosecutorial misconduct and ineffective assistance of counsel. His allegations of prosecutorial misconduct are the same as those raised in his direct appeal. Hoxsie also contends that he was denied effective assistance of counsel because his trial counsel: (1) gave an opening statement that conflicted with Hoxsie's pretrial statements and his later trial testimony, (2) called Waters as a witness who provided the only direct evidence of Hoxsie's guilt, (3) failed to obtain the testimony of a witness who heard Waters say that he, not Hoxsie, had killed the deceased, (4) failed to obtain the testimony of various character witnesses, and (5) failed to introduce other

evidence tending to exonerate Hoxsie, including evidence that the murder weapon was found in Waters's bedroom and that Waters had threatened people with the murder weapon about a week before the shooting. The district court referred the case to a magistrate, who recommended that Hoxsie's petition be dismissed on the merits. After amending the magistrate's findings in five respects, the district court adopted the magistrate's recommendation and this appeal followed.

## DISCUSSION

## I. EXHAUSTION OF STATE REMEDIES

Before addressing the merits of Hoxsie's habeas petition, we must consider whether we should dismiss the petition because Hoxsie has failed to exhaust his available state remedies. In its answer to Hoxsie's habeas petition in the district court, the State conceded that Hoxsie had exhausted all of his claims. On appeal, the State now contends that absent an affirmance on the merits, the petition should be dismissed because Hoxsie has failed to exhaust his ineffective assistance claim in New Mexico state court.

Generally, a federal court presented with a habeas petition containing both exhausted and unexhausted claims should dismiss the entire petition without prejudice. 28 U.S.C. § 2254(b); see Rose v. Lundy, 455 U.S. 509, 510 (1982). We need not resolve this issue, however, because we conclude that it is appropriate to address the merits of a habeas petition notwithstanding the failure

to exhaust available state remedies where, as here, "the interests of comity and federalism will be better served by addressing the merits forthwith." Granberry v. Greer, 481 U.S. 129, 134 (1987); see Miranda v. Cooper, 967 F.2d 392, 400 (10th Cir. 1992). The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, codifies the holding in Granberry by authorizing the denial of a petition on the merits despite failure to exhaust state remedies. See 28 U.S.C. § 2254(b)(2). Because § 2254(b)(2), standing alone, does not contain the standard for determining when a court should dismiss a petition on the merits instead of insisting on complete exhaustion, we read § 2254(b)(2) in conjunction with Granberry. The Supreme Court in Granberry reasoned that "if the court of appeals is convinced that the petition has no merit, a belated application of the exhaustion rule might simply require useless litigation in the state courts." Granberry, 481 U.S. at 133. As we shall explain, all of Hoxsie's claims are without merit.

## II.    Prosecutorial Misconduct

Hoxsie first contends that prosecutorial misconduct in his state criminal trial deprived him of various constitutional rights, including the right to due process, to remain silent, and to confront witnesses against him. As stated above, Hoxsie raises several grounds for his claim of prosecutorial misconduct. The New Mexico Supreme Court did not address the merits of the first two grounds-- asking repetitive and leading questions and reading from an inadmissible

transcript--in Hoxsie's direct appeal. See Hoxsie, 677 P.2d at 622. Hoxsie failed to include these grounds in his docketing statement and, accordingly, the court ruled that they were procedurally barred. Id. In Coleman v. Thompson, 501 U.S. 722, 750 (1991), the Supreme Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

In this case, the New Mexico Supreme Court's dismissal of Hoxsie's first two grounds rested on an "independent and adequate" state procedural rule. See Klein v. Neal, 45 F.3d 1395, 1400 (10th Cir. 1995). Further, Hoxsie has failed to demonstrate either cause and prejudice for his procedural default or that failure to consider his claims will result in a fundamental miscarriage of justice. Therefore, Hoxsie may not obtain review of his first two grounds in this proceeding.

In his third ground, Hoxsie contends that the prosecution introduced numerous prejudicial photographs of the victim, rendering Hoxsie's trial fundamentally unfair. We review Hoxsie's claim of prosecutorial misconduct under the standard set forth in Donnelly v. DeChristoforo, 416 U.S. 637 (1974). See Robison v. Maynard, 829 F.2d 1501, 1509 (10th Cir. 1987). In Donnelly, the Court held that prosecutorial misconduct in a state court violates a defendant's

right to a fair trial only if the prosecutor's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly, 416 U.S. at 643. Viewing Hoxsie's contention in light of this standard, we cannot conclude that the admission of the photographs denied Hoxsie a fair trial. As the district court concluded, the photographs were relevant and were admissible for the purpose of clarifying and illustrating testimony. Thus, the introduction of the photographs did not so infect Hoxsie's trial as to deny his right to due process.

In his fourth ground, Hoxsie contends that the prosecution acted improperly by permitting Suiter's mother to testify at trial and to remain in the courtroom throughout the trial. Hoxsie argues that her testimony and presence in the courtroom was designed to have an impermissible emotional impact on the jury and thereby bias the jury's evaluation of the evidence. As above, we review claims of this type by determining whether the prosecutor's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly, 416 U.S. at 643. Again, we are unable to conclude that the prosecutor's conduct was improper under the standard in Donnelly. Although the mother's testimony, which ended in an emotional breakdown in grief over the death of her son, undoubtedly had an effect on the jury, her testimony was relevant to the identity of the victim. Thus, we cannot fault the prosecutor for calling the mother as a witness. See Willis v. Kemp, 838 F.2d 1510, 1521 (11th

Cir. 1988) (finding no prosecutorial misconduct where the victim's wife "became too emotional to continue her testimony" because the testimony was relevant to the identity of the victim). Further, we cannot conclude that her testimony and presence in the courtroom resulted in a denial of due process. In light of the strong evidence of Hoxsie's guilt presented at trial, there is no reasonable probability that absent the alleged misconduct, "the outcome of the trial would have been different." Robison, 829 F.2d at 1509. We therefore conclude that Hoxsie was not deprived of a fair trial on this ground.

In his fifth ground, Hoxsie contends that the prosecution impermissibly encouraged the jury to infer guilt by remarking to the jury that Hoxsie had tailored his trial testimony after hearing the evidence against him. Specifically, Hoxsie contends the prosecution's remarks violated his rights to due process, to remain silent, and to confront witnesses against him. The following exchange illustrates the alleged error in the prosecutor's remarks:

Q: Now, Mr. Hoxsie, you sat in this courtroom for three days and listened to all the testimony, isn't that correct?
A: Yes, sir.
Q: In fact, you've listened to your tape recording and the tape recording that Mr. Waters gave--in the courtroom and even outside the courtroom?
A: Yes.
Q: That includes Mr. Waters's tape recording [of his post-arrest interview]?
A: Yes.
Q: And your own?
A: [No answer is audible].

Q: So you knew everything that was going to be said and you've heard everything that has been said with regard to what occurred on [the evening before and the morning of the murder]?

Defense counsel objected to this line of questioning, but the trial court gave no curative instruction. Following this exchange, the prosecutor continued his cross-examination with a series of questions establishing that Hoxsie was not claiming self-defense, which was the theory of the case Hoxsie's trial counsel set out in his opening statement. Hoxsie contends that these questions, and similar remarks in the prosecution's closing, invited the jury to infer, solely because he exercised his constitutional rights to be present at trial, to hear witnesses, and to testify, that Hoxsie had tailored his testimony to fit the State's case.

We conclude that the prosecutor's remarks did not rise to the level of constitutional error, but were permissible attacks on Hoxsie's credibility in light of the inconsistency between Hoxsie's trial testimony and his defense counsel's opening statement. The prosecutor's questions did not invite the jury to infer guilt solely because Hoxsie testified last, but because Hoxsie's trial testimony contradicted his defense counsel's opening statement and even his own pretrial statement to the police. "[I]n a case involving two essentially conflicting stories, it is reasonable to infer, and to argue, that one side is lying." United States v. Lanier, 33 F.3d 639, 659 (6th Cir. 1994), vacated on other grounds, 43 F.2d 1033

(6th Cir. 1995), on reh'g en banc, 73 F.3d 1380 (6th Cir. 1996), cert. granted, 116 S. Ct. 2522 (1996).

Even if the prosecution's remarks did infringe upon Hoxsie's constitutional rights, the error was harmless in light of the other evidence of Hoxsie's guilt presented at trial. We review the district court's determination of harmless error de novo. Tuttle v. Utah, 57 F.3d 879, 884 (10th Cir. 1995). The standard for harmless error on collateral attack in a habeas case is whether "an error had substantial and injurious effect or influence in determining the jury's verdict." Id. at 883 (quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)). In evaluating a claim of prosecutorial misconduct based on improper remarks made by the prosecutor, we have stated:

> To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly "could have tipped the scales in favor of the prosecution." . . . We also ascertain whether curative instructions by the trial judge, if given, might have mitigated the effect on the jury of the improper statements. . . . When a prosecutor responds to an attack made by defense counsel, we evaluate that response in light of the defense argument. . . . Ultimately, we "must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly."

Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994) (citing Hopkinson v. Shillinger, 866 F.2d 1185, 1210 (10th Cir. 1989)), cert. denied, 115 S. Ct. 2278 (1995). After a thorough review of the record, we are satisfied that the prosecutor's remarks did not "tip the scales" in favor of Hoxsie's guilt. Hoxsie's

own contradictory testimony, the testimony of Waters, and the demonstrative evidence offered at trial provide overwhelming evidence of Hoxsie's guilt. In Hoxsie's direct appeal, the New Mexico Supreme Court concluded that "the record clearly shows that the evidence of guilt is so overwhelming that there is no reasonable probability that any misconduct which may have occurred contributed to the convictions." Hoxsie, 677 P.2d at 623. We agree and, therefore, reject Hoxsie's claim that he is entitled to habeas relief on this ground.

Finally, Hoxsie contends that the cumulative effect of the above instances of alleged prosecutorial misconduct deprived him of a fair trial. Cumulative-error analysis applies where there are two or more actual errors. United States v. Rivera, 900 F.2d 1462, 1471 (10th Cir. 1990). It does not apply, however, to the cumulative effect of non-errors. Id. Thus, unless the entire trial was so fundamentally unfair that a defendant's due process rights were violated, Hoxsie is not entitled to relief. Id. at 1471 n.8. In this case, Hoxsie has not shown that the above allegations of misconduct constitute actual error. Further, we are not persuaded that the record in this case demonstrates a trial "so fundamentally unfair that due process was denied." Fero, 39 F.3d at 1475. In sum, we hold that Hoxsie's claims of prosecutorial conduct are without merit.

**III.    Ineffective Assistance of Counsel**

Hoxsie next contends that the district court erred in rejecting his ineffective assistance of counsel claim on the merits and in failing to grant him an evidentiary hearing on the issue. We address each contention in turn.

## A.    Merits

We review a claim of ineffective assistance of counsel de novo. Nickel v. Hannigan, 97 F.3d 403, 408 (10th Cir. 1996), petition for cert. filed, --U.S.L.W.-- (Dec. 30, 1996) (No. 96-7296). To prevail on his claim, Hoxsie must meet the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, Hoxsie must show that his counsel's performance fell below an objective standard of reasonableness, id. at 688, and second, that the deficient performance resulted in prejudice to his defense, id. at 687. To succeed under the first prong, Hoxsie must overcome a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance; that is the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). To succeed under the second prong, Hoxsie must show "that counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." Id. at 687. This is shown by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

We conclude that none of the grounds on which Hoxsie claims ineffective assistance of counsel rise to the level of a Sixth Amendment violation. In his first ground, Hoxsie contends that his counsel was ineffective because he gave an opening statement that conflicted with Hoxsie's later testimony at trial. On this point, Hoxsie fails to overcome the presumption that the opening statement "might be considered sound trial strategy." Strickland, 466 U.S. at 689. Indeed, there is evidence that Hoxsie aided in the scripting of the opening statement and later, after hearing the state's case, changed his testimony. Accordingly, Hoxsie has failed to show that his counsel's performance was constitutionally ineffective.

In his second ground, Hoxsie contends counsel was ineffective because he decided to call Waters as a witness. Hoxsie argues that a reasonably performing defense counsel would have realized that Water's testimony would be harmful to the defense. Hoxsie bases his claim on three allegations: (1) his defense counsel knew that Waters and his attorney met with the prosecution the weekend before the trial, (2) Hoxsie told his defense counsel that he had learned from a jailer that Waters had struck a deal with prosecutors, and (3) Waters's trial did not proceed first as originally scheduled. None of these allegations are disputed by defense counsel.

"For counsel's [decision] to rise to the level of constitutional ineffectiveness, the decision . . . must have been 'completely unreasonable, not

merely wrong, so that it bears no relationship to a possible defense strategy.'" Hatch v. Oklahoma, 58 F.3d 1447, 1459 (10th Cir. 1995) (quoting United States v. Ortiz Oliveras, 717 F.2d 1, 4 (1st Cir. 1983), cert. denied, 116 S. Ct. 1881 (1996)). The reasonableness of counsel's challenged conduct must be assessed at the time of the conduct. Dever v. Kansas State Penitentiary, 36 F.3d 1536, 1537 (10th Cir. 1994). Neither hindsight nor success is the measure. Id. Moreover, "the decision of what witnesses to call is a tactical one within the trial counsel's discretion." Minner v. Kerby, 30 F.3d 1311, 1317 (10th Cir. 1994). Mindful of these principles, we conclude, as the district court did, that the decision to call Waters was a tactical decision, well within the range of reasonable attorney performance. When Hoxsie's defense counsel decided to call Waters as a witness, Waters had not affirmatively named Hoxsie as the shooter. In fact, Waters told the police in his pretrial statement that, due to his level of intoxication, he could not remember what occurred the morning of the murder. Hoxsie's defense counsel clearly thought, based on Waters pretrial statements, that he would do poorly on the stand, perhaps even admitting to the shooting, and that the jury might conclude that Hoxsie was innocent. Thus, counsel's decision to call Waters does not constitute ineffective assistance of counsel.

As for Hoxsie's remaining grounds (3), (4) and (5), we have carefully reviewed the record and have determined that, for substantially the reasons set forth in the magistrate's opinion, all are without merit.

**B.    Evidentiary Hearing**

Finally, Hoxsie contends that the district court erred in denying him an evidentiary hearing on his ineffective assistance of counsel claim. "To be entitled to a hearing on this claim, [Hoxsie] must have alleged facts which, if proven, would establish he received ineffective assistance of counsel." Lasiter v. Thomas, 89 F.3d 699, 703 (10th Cir.), cert. denied, 117 S. Ct. 493 (1996). As shown above, Hoxsie has failed to make a credible allegation that his "counsel's performance was deficient." Strickland, 466 U.S. at 687. Further, the evidence that Hoxsie seeks to introduce "must have been inadequately developed in state court for reasons not attributable to petitioner's inexcusable neglect" or "deliberate bypass." Dever, 36 F.3d at 1536. Here, for reasons unknown, Hoxsie deliberately bypassed his opportunity to seek an evidentiary hearing on his ineffective assistance claim in a state habeas corpus proceeding. Thus, we conclude that the district court did not err in declining to hold an evidentiary hearing. AFFIRMED.