**Jose ORRACA, Petitioner,**

v.

**Hans G. WALKER, Superintendent, Auburn Correctional Facility, Defendant.**

**No. 98 Civ. 4459 (LMM).**

United States District Court, S.D. New York.

June 18, 1999.

Jose Orraca, Auburn, NY, pro se.

Susan Axelrod, Asst. District Attorney, New York County, New York City, for defendant.

### MEMORANDUM AND ORDER

McKENNA, District Judge.

By Report and Recommendation dated May 26, 1999 (the "Report"), Magistrate Judge Peck recommended that the above petition for a writ of habeas corpus be denied without prejudice as a mixed petition. No timely objections having been filed (and petitioner having, apparently, *see* his letter to the Court dated June 14, 1999, commenced a proceeding to raise his unexhausted claims in state court), and upon consideration of the Report, this Court accepts the recommendation of the Magistrate Judge.

The petition is dismissed without prejudice as a mixed petition.

SO ORDERED.

### REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge.

Petitioner Jose Orraca filed this timely habeas corpus petition on or about April 27, 1998 alleging that: his manslaughter conviction was against the weight of the evidence; he was denied a fair trial because of erroneous evidentiary rulings and prosecutorial misconduct; *Brady* violations; issues regarding eyewitness identification; and errors in his sentencing. (*E.g.*, Pet. ¶ 12(A); Orraca Br. at 1.)

For the reasons set forth below, because Orraca's petition raises claims that have not been exhausted in State court, I recommend that Orraca's petition be dis-

missed without prejudice as a mixed petition.

## PROCEDURAL BACKGROUND

On November 17, 1993, Orraca was convicted in Supreme Court, New York County, of first degree manslaughter, second degree assault and first degree reckless endangerment, and sentenced to consecutive sentences totaling 19½ to 39 years imprisonment. (Pet.¶¶ 1–4.) *See People v. Orraca*, 237 A.D.2d 148, 148, 655 N.Y.S.2d 7, 8 (1st Dep't), *appeal denied*, 90 N.Y.2d 861, 661 N.Y.S.2d 188, 683 N.E.2d 1062 (1997). Orraca's conviction arose from the June 1, 1992 shooting death of Israel Martinez, and the July 30, 1992 police chase and arrest of Orraca. (*See, e.g.*, Orraca 1st Dep't Br. at 3.)

### Orraca's Direct Appeal

On August 5, 1996, Orraca's counsel filed a 62–page brief to the First Department, raising the following issues: (1) insufficiency of the evidence and the verdict was against the weight of the evidence (Orraca 1st Dep't Br. at 15–25; Orraca 1st Dep't Reply Br. at 12–15); (2) exclusion of defense evidence (Orraca 1st Dep't Br. at 25–28); (3) prosecutorial misconduct during summation and related evidentiary errors (*id.* at 28–54; Orraca 1st Dep't Reply Br. at 2–12); (4) identification evidence should have been suppressed (Orraca 1st Dep't Br. at 57–60; Orraca 1st Dep't Reply Br. at 15–19); (5) Orraca was erroneously sentenced as a second violent felony offender (Orraca 1st Dep't Br. at 60–61; Orraca 1st Dep't Reply Br. at 19); and (6) consecutive sentences were excessive (Orraca 1st Dep't Br. at 61–62).

The First Department affirmed Orraca's conviction on March 13, 1997, and on June 16, 1997 the Court of Appeals denied leave to appeal. *People v. Orraca*, 237 A.D.2d 148, 655 N.Y.S.2d 7 (1st Dep't), *appeal denied*, 90 N.Y.2d 861, 661 N.Y.S.2d 188, 683 N.E.2d 1062 (1997).

### Orraca's N.Y. CPL § 440.10 Motion

On or about June 19, 1998, Orraca filed a CPL § 440.10 motion in the trial court alleging ineffective assistance of trial counsel. (Orraca Traverse Aff. ¶¶ 20–21; Affirmation of ADA Susan Axelrod, dated 11/17/98, ¶ 10.) On or about October 9, 1998, the trial court denied Orraca's CPL § 440.10 motion. (Orraca Traverse Aff. ¶ 21 & Ex. A: 10/9/98 Order; *see* Axelrod Aff. ¶ 10.) On February 26, 1999, the First Department denied leave to appeal from the trial court's denial of the CPL § 440.10 motion, and the New York Court of Appeals denied leave to appeal on March 16, 1999. (*See* Docket No. 8: Orraca 3/17/99 Letter to Court: Enclosures.)[1]

### Orraca's Current Federal Habeas Petition

Orraca's current federal habeas petition is dated April 27, 1998 and was received by the Court's Pro Se Office on April 30, 1998. (*See* Pet. at pp. 2, 7.) Orraca agrees with the following summary by the State of his Petition:

In that petition, he sought relief on a number of grounds: 1) that his conviction for manslaughter had been obtained in violation of his due process rights; 2) that the trial court had erred in permitting the People to introduce evidence of the lineup identifications; 3) that all of the court's pretrial rulings were unfair; 4) that the trial court precluded the introduction of exculpatory evidence; 5) that the trial court prevented him from asserting his defense; 6) that the police and prosecutor had engaged in miscon-

---

1. The District Attorney's office had alleged that according to their records, Orraca did not request leave to appeal the CPL § 440.10 decision to the First Department. (Axelrod Aff. ¶ 10.) Orraca disputed that and submitted copies of his notice of appeal to the First Department. (Orraca Traverse Aff. ¶ 22 & Ex. B: Orraca 10/20/98 Leave to Appeal pa- pers.) Orraca also wrote to the First Department, stating that "[i]t appears that something, somewhere turned up missing or was overlooked." (Orraca Traverse Ex. C: 11/23/98 Letter to 1st Dep't.) It appears that as a result of this letter, the First Department denied leave to appeal.

duct which included the suppression of exculpatory evidence; 7) and that his sentence was unlawful.

(Axelrod Aff. ¶ 11; *accord,* Orraca Traverse Aff. ¶ 27; *see also* Pet. ¶ 12(A).)

Orraca also filed two memoranda of law in support of his habeas petition. In the 26–page brief ("Brief A"), Orraca raised various claims/arguments: (1) *Brady* violation and prosecutorial misconduct (Orraca Br. A at 6–7); (2) prosecutor's failure to gather information and inform Orraca of benefits given to a prosecution witness (*id.* at 7–8); (3) improper pretrial identification procedures including denial of counsel at the lineup (*id.* at 8–12); (4) *Brady/Rosario* violation (*id.* at 12–15); (5) prosecutorial misconduct during summation, with "actual innocence" excusing procedural default (*id.* at 16–18); (7) the verdict was against the weight of the evidence (*id.* at 18–20); (8) prosecutorial duty to preserve evidence until requested (without specifying what evidence) (*id.* at 20–21); (9) denial of due process in curtailing his cross-examination of witnesses as to whether drugs were sold in the store at which the shooting occurred (*id.* at 21–22); (10) *Rosario* violation for the State's failing to preserve the piece of paper with car license number and the car reported as speeding away from the shooting (*id.* at 23–24); and (11) prosecutorial misconduct and *Brady* violation for allowing the car in which Orraca was riding when previously arrested in January 1992 to be stolen (*id.* at 25–26). (*See* Axelrod Aff. ¶ 12.)

Orraca agrees with the following summary by the State of his second memorandum of law, Brief B:

> In [Brief] B, petitioner again complained that he had been denied his right to counsel at the lineups and that the lineups had been unduly suggestive because none of the fillers were dark-skinned Hispanic men (*see* p. 4–8). Petitioner also complained that the People had not provided certain items of *Rosario* material in a timely fashion and thus prevented petitioner from establishing a defense (p. 9). Petitioner then alleged that the People had failed to disclose the existence of a ballistics report that demonstrated that the gun used to shoot Israel Martinez was not the same as the one that had been used to shoot petitioner (p. 10). Lastly, petitioner claimed that the court had erred when it refused to sever the murder counts from the charges arising as a result of the high speed chase on the day of petitioner's arrest (p. 11).

(Axelrod Aff. ¶ 13; *accord,* Orraca Traverse Aff. ¶ 30; *see* Orraca Br. B.) In addition, Orraca's Brief B (to which was attached a 116–page Addendum Statement of Facts) argued that his conviction was based on insufficient evidence and against the weight of the evidence. (Orraca Br. B. at 11–12.)

## ANALYSIS

### ORRACA'S HABEAS PETITION SHOULD BE DISMISSED WITHOUT PREJUDICE AS A "MIXED" PETITION THAT FAILED TO EXHAUST STATE COURT REMEDIES

#### A. Orraca's Petition Contains Both Exhausted and Unexhausted Claims

A determination of whether Orraca exhausted all of his present claims in State court is made more difficult by the way Orraca brought his petition—his petition contains only a single ground (Pet.¶ 12(A)) that is, however, made up of several claims set out in the Petition and in two supporting briefs. Accordingly, the Court must begin by examining each of Oracca's federal habeas claims to see whether it was raised in State court.

First, Orraca raises a sufficiency/weight of the evidence claim. (*E.g.,* Orraca Br. A at 18–20; Orraca Br. B at 11.) Orraca raised this issue on direct appeal. (Orraca 1st Dep't Br. at 15–25; Orraca 1st Dep't

Reply Br. at 12–15.) Thus, this claim appears to be exhausted.[2]

Second, Orraca complains about the state court's rulings on the pretrial identifications. (Pet.¶ 12(A); Axelrod Aff. ¶ 11(2) & Orraca Traverse Aff. ¶ 27; Orraca Br. A at 8–12; Orraca Br. B at 4–8.) Orraca raised this issue on direct appeal. (Orraca 1st Dep't Br. at 57–60; Orraca 1st Dep't Reply Br. at 15–19.) Thus, this claim appears to be exhausted. (*See* fn. 2 above.)

Third, Orraca alleges various *Brady* (or its state law counterpart, *Rosario* ) violations. (*See* Pet. ¶ 12(A); Orraca Br. A at 6–8, 12–15, 20–21, 23–26; Orraca Br. B at 9–10.)[3] Orraca did not raise any *Brady/Rosario* claims on direct state appeal or in his CPL § 440.10 motion. (*See* pages 2–3 above; *see also* Axelrod Aff. ¶ 14.) According to the State, Orraca may still raise his *Brady* claims in a second CPL § 440.10 motion. (*See* Axelrod Aff. ¶ 14; State Br. at 4–6.) The claim, therefore, is not exhausted.

Fourth, Orraca claims that the trial court erred in admitting evidence of prior criminal conduct or "bad acts" by Orraca. (Orraca Br. A at 16–18.) Orraca raised this claim on direct appeal (Orraca 1st Dep't Br. at 29–34, 37–44) and thus it appears to be exhausted. (*See* fn. 2 above.)

Fifth, Orraca claims that the trial court erred in limiting his cross-examination of witnesses and presentation of defense evidence. (Orraca Br. A at 21–22.) Orraca raised this claim on direct appeal (Orraca 1st Dep't Br. at 25–28), and thus it appears to be exhausted. (*See* fn. 2 above.)

Sixth, Orraca argues that the trial court erred in refusing to sever the different counts of the indictment. (Orraca Br. B at 11.) Orraca did not raise this claim before the State courts, and thus the claim is not exhausted.

■ Seventh, Orraca challenges his sentence as a predicate offender. (Pet. ¶ 12(A), last sentence.) Orraca raised this claim on direct appeal (Orraca 1st Dep't Br. at 60–61), but only on state statutory grounds, and not federal constitutional grounds. The issue, therefore, is not exhausted. *See, e.g., Levine v. Commissioner of Correctional Servs.,* 44 F.3d 121, 125–26 (2d Cir.1995) (constitutional challenge to sentencing dismissed as unexhausted where only state statutory challenge pressed on direct appeal in New York courts); *Petrucelli v. Coombe,* 735 F.2d 684, 687–90 (2d Cir.1984); *Wilson v. Fogg,* 571 F.2d 91, 92 (2d Cir.1978) ("[w]here a petitioner has raised his claim in the state court solely as a violation of a state statute and not on the basis of an invasion of his federal constitutional rights, dismissal by the federal court is mandated" as the claim is unexhausted); *Colon v. Johnson,* 19

---

**2.** Because Orraca's petition clearly contains unexhausted claims, the Court has not carefully examined all claims that he raised in State court to determine if they were sufficiently raised in federal constitutional terms as required by *Daye v. Attorney General* and its progeny. *See, e.g., Daye v. Attorney General of New York,* 696 F.2d 186, 194 (2d Cir. 1982) (en banc), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984); *Diaz v. Coombe,* 97 Civ. 1621, 1997 WL 529608 at *3 (S.D.N.Y. June 12, 1997) (Mukasey, D.J. & Peck, M.J.); *Walker v. Miller,* 959 F.Supp. 638, 641 (S.D.N.Y.1997) (McKenna, D.J. & Peck, M.J.); *Boyd v. Hawk,* 94 Civ. 712, 1996 WL 406680 at *3 (S.D.N.Y. May 31, 1996) (Batts, D.J. & Peck, M.J.). Orraca should carefully review all of his claims when he returns to State court to insure that all have

been raised before the State courts in federal Constitutional terms.

**3.** Several of Orraca's discussions of the *Brady* issue are general, without identifying the nature of the alleged *Brady* violation. (Pet. ¶ 12(A); Orraca Br. A at 6–8, 20–21.) Orraca also raises the following specifics: (1) admission at trial of hearsay testimony about threats made by Orraca (Orraca Br. A at 14); (2) a scrap of paper with a license plate number on it (*id.* at 23, 25), (3) car "stolen" from police custody (*id.* at 23–25), (4) *delay* in providing the homicide analysis reports and certain other *Rosario* material to the defense (Orraca Br. B at 9), and (5) ballistic reports (*id.* at 10).

F.Supp.2d 112, 117–18 (S.D.N.Y.1998) (claim that was "framed under New York State law" rather than as a federal constitutional claim is unexhausted); *Brown v. Miller,* 97 Civ. 1874, 1998 WL 91081 at *2 (S.D.N.Y. March 3, 1998) (Sotomayor, D.J.); *Francis v. Stone,* 995 F.Supp. 368, 378–79 (S.D.N.Y.1998) (claim is unexhausted where it was "framed solely as a contention that the state had failed to comply with CPL § 330.20" on direct appeal); *Gibriano v. Attorney General of New York,* 965 F.Supp. 489, 491–92 (S.D.N.Y.1997) (Sprizzo, D.J. & Peck, M.J.) (speedy trial claim was unexhausted where it was raised in state court only on state statutory grounds).

Finally, several sentences in the petition are so vague that the Court cannot determine what claims they are meant to raise, if any, and whether they have been exhausted: (a) reference to denial of a fair trial in violation of due process and equal protection rights; (b) "police and prosecutorial misconduct denied petitioner of his right to counsel at crucial points . . . ." (Pet. ¶ 12(A).) [4]

In short, Orraca clearly has not exhausted his *Brady,* severance and sentencing claims.

### B. *Prior to the Antiterrorism and Effective Death Penalty Act, the Court was Required to Dismiss "Mixed" Petitions Containing Both Exhausted and Unexhausted Claims*

■ This section discusses the law as to "mixed" petitions in effect prior to the April 24, 1996 enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA").

A federal court may not consider the merits of a state prisoner's petition for a writ of habeas corpus until the petitioner has exhausted the state remedies available to him. 28 U.S.C. § 2254(b).[5] While pre-amendment Section 2254 did not directly address the problem of "mixed" habeas petitions, that is, those containing both exhausted and unexhausted claims, the Supreme Court adopted a rule of total exhaustion in *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). The Supreme Court held:

> Because a rule requiring exhaustion of all claims furthers the purposes underlying the habeas statute, we hold that a district court must dismiss such "mixed petitions," leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court.

*Id.* at 510, 102 S.Ct. at 1199.[6] The Supreme Court explained that the complete "exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose v. Lundy,* 455 U.S. at 518, 102 S.Ct. at 1203. "A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first

---

4. Orraca's Traverse appears to indicate that the reference to denied assistance of counsel refers to not being given counsel at a lineup (Orraca Traverse Aff. ¶ 28); if that is so, the claim would appear to be exhausted. Orraca's renewed habeas petition, if he files one after exhausting State remedies, should be more carefully and precisely drafted.

5. Prior to amendment by the AEDPA, 28 U.S.C. § 2254(b) provided that:

   An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

6. *Accord, e.g., Levine v. Commissioner of Correctional Servs.,* 44 F.3d 121, 124 (2d Cir. 1995); *Grady v. LeFevre,* 846 F.2d 862, 864 (2d Cir.1988); *Petrucelli v. Coombe,* 735 F.2d 684, 687 (2d Cir.1984).

opportunity to review all claims of constitutional error." *Id.* at 518–19, 102 S.Ct. at 1203. The Supreme Court further noted that the total exhaustion rule will not impair the prisoner's interest in obtaining speedy federal relief "since he can always amend the petition to delete the unexhausted claims." *Id.* at 520, 102 S.Ct. at 1204.[7]

The Second Circuit held, prior to the AEDPA, that "[p]assing on the merits of claims in a habeas petition containing unexhausted claims runs counter to *Rose v. Lundy* " *Levine v. Commissioner of Correctional Servs.*, 44 F.3d 121, 125 (2d Cir.1995); *see, e.g., Morris v. Reynolds*, 48 F.Supp.2d 379, 380 (S.D.N.Y. 1999) (Baer, D.J. & Peck, M.J.); *Cowans v. Artuz*, 14 F.Supp.2d 503, 505 (S.D.N.Y.1998) (Preska, D.J. & Peck, M.J.); *Espinal v. Walker*, 97 Civ. 3187, 1998 WL 151273 at *3 (S.D.N.Y. March 27, 1998) (Patterson, D.J. & Peck, M.J.); *Johnson v. Scully*, 967 F.Supp. 113, 115 (S.D.N.Y.1997) (Rakoff, D.J. & Peck, M.J.); *Diaz v. Coombe*, 97 Civ. 1621, 1997 WL 529608 at *2–3 (S.D.N.Y. June 12, 1997) (Mukasey, D.J. & Peck, M.J.); *Gibriano v. Attorney General*, 965 F.Supp. 489, 491 (S.D.N.Y.1997) (Sprizzo, D.J. & Peck, M.J.); *Walker v. Miller*, 959 F.Supp. 638, 641 (S.D.N.Y. 1997) (McKenna, D.J. & Peck, M.J.); *Boyd v. Hawk*, 94 Civ. 7121, 1996 WL 406680 at *3 (S.D.N.Y. May 31, 1996) (Batts, D.J. & Peck, M.J.); *Ehinger v. Miller*, 928 F.Supp. 291, 293 (S.D.N.Y.1996) (Mukasey, D.J. & Peck, M.J.).

### C. *Effect of the AEDPA*

The AEDPA permits the Court to deny on the merits habeas petitions containing unexhausted claims. Thus, 28 U.S.C. § 2254 now states, in relevant part:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A) the applicant has exhausted the remedies available in the courts of the State;

. . .

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254(b)(1)–(2) (1998).

Section 2254(b) merely gives the Court discretion to deny unexhausted petitions on the merits; it does not require the Court to determine unexhausted claims. *See* 28 U.S.C. § 2254(b)(2) (1998).

Section 2254(b)(2), however, "does not provide a standard for determining when a court should dismiss a petition on the merits rather than requiring complete exhaustion." *Lambert v. Blackwell*, 134 F.3d 506, 516 (3d Cir.1997); *accord, e.g., Hoxsie v. Kerby*, 108 F.3d 1239, 1243 (10th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 126, 139 L.Ed.2d 77 (1997); *Morris v. Reynolds*, 48 F.supp.2d 379, 381 (S.D.N.Y. 1999) (Baer, D.J. & Peck, M.J.); *Rivera v. New York State Parole Div.*, 98 Civ. 7555, 1999 WL 246752 at *3 (S.D.N.Y. April 1, 1999) (Rakoff, D.J. & Peck, M.J.); *Redd v. Quinones*, 98 Civ. 2604, 1998 WL 702334 at *3 n. 3 (S.D.N.Y. Oct.7, 1998); *Lum v. Penarosa*, 2 F.Supp.2d 1291, 1292–93 (D.Haw. 1998); *Cowans v. Artuz*, 14 F.Supp.2d 503, 506 (S.D.N.Y.1998) (Preska, D.J. & Peck, M.J.); *Benitez v. Senkowski*, 97 Civ. 7819, 1998 WL 265245 at *3 (S.D.N.Y. May 19, 1998) (Cote, D.J. & Peck, M.J.); *Gaylor v. Harrelson*, 962 F.Supp. 1498, 1499 (N.D.Ga. April 3, 1997). Neither the Supreme Court nor the Second Circuit has established what standard a district court should use to determine when to dismiss a petition on the merits rather than requiring complete exhaustion.

---

**7.** However, "a prisoner who decides to proceed only with his exhausted claims and deliberately sets aside his unexhausted claims risks dismissal of subsequent federal petitions." *Id.* at 521, 102 S.Ct. at 1205.

The Court agrees with the decision in *Duarte v. Hershberger*, 947 F.Supp. 146 (D.N.J.1996), where the court explained:

Pursuant to the 1996 AEDPA amendments, however, the Court may exercise discretion to hear and deny petitioner's non-exhausted claim; the total exhaustion rule is no longer binding. *See* 28 U.S.C. § 2254 [sic; § 2254(b) ]. The Court, however, declines to exercise the discretion to hear and dismiss petitioner's application in this case.

By refusing to exercise the discretion provided under section 2254 [sic; § 2254(b) ], this Court endorses the rationale of the "total exhaustion rule" and continues to furnish state appellate courts the initial opportunity to correct trial court decisions. Moreover, the refusal to exercise discretion here does not conflict with the intent of Congress. In fact, enforcing the "total exhaustion rule" in this context will "encourage habeas petitioners to exhaust all of their claims in state court and to present the federal court with a single habeas petition." *Rose*, 455 U.S. at 520, 102 S.Ct. at 1204. This will serve to avoid piecemeal litigation and eventually decrease the burden on federal courts. *Id.*

Finally, the Court notes that applying the "total exhaustion rule" in cases such as this one does not unduly prejudice petitioners. Those who misunderstand the requirement and submit unacceptable "mixed petitions" may resubmit their application pending either the removal of the unexhausted claim, or exhaustion of the offending claim at the state level.

*Duarte v. Hershberger*, 947 F.Supp. at 150; *accord, e.g., Morris v. Reynolds*, 1999 WL 289205 at *4; *Rivera v. New York State Parole Div.*, 1999 WL 246752 at *3–4; *Cowans v. Artuz*, 14 F.Supp.2d at 506; *Fennell v. Artuz*, 14 F.Supp.2d 374, 379 (S.D.N.Y.1998) (Preska, D.J. & Peck, M.J.); *Benitez v. Senkowski*, 1998 WL 265245 at *3–4; *Espinal v. Walker*, 97 Civ.

3187, 1998 WL 151273 at *4 (S.D.N.Y. March 27, 1998) (Patterson, D.J. & Peck, M.J.); *Diaz v. Coombe*, 1997 WL 529608 at *4; *Fluellen v. Walker*, 975 F.Supp. 565, 568 (S.D.N.Y.1997) (Wood, D.J. & Peck, M.J.); *Johnson v. Scully*, 967 F.Supp. at 116; *Walker v. Miller*, 959 F.Supp. at 642; *see also Dafnos v. Artuz*, No. 97 CV 1562, 1998 WL 801775 at *2 (E.D.N.Y. Nov.16, 1998). *Duarte* does not provide a standard, but makes clear that even under the AEDPA, the federal courts usually should defer to the state courts on unexhausted habeas claims.

The Court notes that several district judges in this Circuit have expressed the test as whether the unexhausted claim is "patently frivolous." *E.g., Turner v. Senkowski*, No. 97–CV–653, 1998 WL 912011 at *4 (W.D.N.Y. Nov. 23, 1998); *Youngblood v. Greiner*, 97 Civ. 3289, 1998 WL 720681 at *6 (S.D.N.Y. Oct.13, 1998); *Colon v. Johnson*, 19 F.Supp.2d 112, 120, 122 (S.D.N.Y.1998); *Hogan v. Ward*, 998 F.Supp. 290, 293 (W.D.N.Y.1998); *Edkin v. Travis*, 969 F.Supp. 139, 142 n. 1 (W.D.N.Y.1997); *Rodriguez v. Miller*, 96 Civ. 4723, 1997 WL 599388 at *3 (S.D.N.Y. Sept.29, 1997); *Ojeda v. Artuz*, 96 Civ. 5900, 1997 WL 283398 at *3 n. 5 (S.D.N.Y. May 29, 1997); *see also, e.g., Terrence v. Senkowski*, 97 Civ. 3242, 1999 WL 301690 at *5 n. 4 (S.D.N.Y. May 12, 1999) (exercising discretion to dismiss unexhausted claims under § 2254(b) where "all of petitioner's claims lack merit," citing Youngblood's "patently frivolous" language); *Cuadrado v. Stinson*, 992 F.Supp. 685, 687 (S.D.N.Y.1998) (it is perhaps appropriate for court to decide unexhausted claim on merits "where a petition was 'patently frivolous,' . . . but this is not such a case. The Court believes that it is still the best policy to 'allow[ ] the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.' "); *Brown v. Miller*, 97 Civ. 1874, 1998 WL 91081 at *2 (S.D.N.Y. March 3, 1998) (Sotomayor, D.J.) (same).[8]

---

**8.** Other courts, relying on the pre-AEDPA Supreme Court decision in *Granberry v. Greer*,

The Court here need not decide whether the "patently frivolous" or some other standard is appropriate to use to determine when to consider the merits of unexhausted claims pursuant to § 2254(b).[9] *See, e.g., Morris v. Reynolds*, 1999 WL 289205 at *5; *Rivera v. New York State Parole Div.*, 1999 WL 246752 at *4; *Cowans v. Artuz*, 14 F.Supp.2d at 507; *Fennell v. Artuz*, 14 F.Supp.2d at 379; *Benitez v. Senkowski*, 1998 WL 265245 at *4. Suffice it to say that in this case, where three of Orraca's claims have not been addressed by the State courts and where the parties will need to make a record as to some of the claims, the Court believes it appropriate to decline to exercise its discretion to decide Orraca's petition on the merits.

This best comports with the rationale of *Rose v. Lundy* and *Duarte v. Hershberger*, discussed above.

The Court notes that petitioner Orraca should not be heard to complain about the Court's decision as to his petition, since under the AEDPA, this Court can reach the merits as to unexhausted claims only if it denies them. *See* 28 U.S.C. § 2254(b)(2) (1998) (*"An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."*).[10]

## CONCLUSION

For the reasons set forth above, the Court should dismiss Orraca's federal ha-

---

481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987), express the test as whether " 'it is perfectly clear that the [petitioner] does not raise even a colorable federal claim,' " in which case the Court should dismiss the unexhausted claim on the merits (or rather the clear lack thereof). *Lambert v. Blackwell*, 134 F.3d at 514–15; *see also, e.g., Gassaway v. Cody*, 132 F.3d 42 (table), 1997 WL 767560 at *2 & n. 1 (10th Cir. Dec.15, 1997) (the AEDPA codified *Granberry's* holding that the merits of an unexhausted claim can be reached where " 'the interests of comity and federalism will be better served by addressing the merits forthwith' "), *cert. denied*, —— U.S. ——, 119 S.Ct. 813, 142 L.Ed.2d 672 (1999); *Hoxsie v. Kerby*, 108 F.3d at 1242–43; *Lum v. Penarosa*, 2 F.Supp.2d at 1293 ("This Court agrees with the Tenth Circuit's sound analysis, that when a habeas petition is clearly without merit, the interests of comity and federalism, which underpin the exhaustion doctrine, are better served if the federal court addresses the merits pursuant to § 2254(b)(2), rather than sending the petitioner back to the state courts on a futile quest to exhaust ultimately meritless claims."); *Gaylor v. Harrelson*, 962 F.Supp. at 1500 ("the test is whether it is 'perfectly clear' that the petitioner has failed to state 'even a colorable claim.' ... [This] requires only a cursory examination of the petitioner's claims. If this brief examination arouses the slightest suspicion that the claims have merit, dismissal without prejudice is appropriate to allow the State an opportunity to consider the claims."); *Delaney v. Commissioner of Dept. of Mental Health*, No. C.A. 92–12025, 92–12026, 1998 WL 113852 at *5 (D.Mass. March 5, 1998) ("under both the old habeas statute, *see Granberry*, and the new habeas statute, 28 U.S.C.

§ 2254(b)(2), a court may deny an unexhausted petition on the merits if it clearly does not raise a colorable federal claim"); *United States ex rel. Walton v. Gilmore*, No. 96 C 2375, 1997 WL 51703 at *5 (N.D.Ill. Feb.4, 1997) (dismissal without prejudice granted where "nothing on the face of the petition suggests that [petitioner's] claims are frivolous").

9. Whatever the stated standard used by other decisions, the Court strongly suspects that the real standard being used by the federal courts is whether it is easier to dismiss as a mixed petition or easier to reach the merits of the unexhausted claim. Thus, for example, where the issue of whether the claim is exhausted is somewhat questionable, but the lack of the merit of the claim is easily shown, it may be more appropriate for the Court to reach the merits. *See, e.g., Morris v. Reynolds*, 1999 WL 289205 at *6 n. 8; *Rivera v. New York State Parole Div.*, 1999 WL 246752 at *4 n. 4; *Cowans v. Artuz*, 14 F.Supp.2d at 507 n. 5; *Benitez v. Senkowski*, 1998 WL 265245 at *4 n. 5.

10. Obviously, the State cannot complain about the Court's decision, because it had the right under the AEDPA to expressly waive the complete exhaustion requirement, 28 U.S.C. § 2254(b)(3), but it chose to move to dismiss without prejudice for failure to exhaust. (*See* Axelrod Aff. ¶ 14; State Br. at 4–7.) *See, e.g., Rivera v. New York State Parole Div.*, 1999 WL 246752 at *4 n. 5; *Benitez v. Senkowski*, 1998 WL 265245 at *5 n. 6; *Nasr v. Stegall*, 978 F.Supp. 714, 717 (E.D.Mich.1997); *Gaylor v. Harrelson*, 962 F.Supp. at 1500–01.

beas petition without prejudice, because he has failed to properly exhaust several of his claims in state court, unless Orraca withdraws his unexhausted claims (*see* fn. 7 above).[11]

### *FILING OF OBJECTIONS TO THIS REPORT AND RECOMMEN- DATION*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Lawrence M. McKenna, 500 Pearl Street, Room 1640, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge McKenna. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL— CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15 (2d Cir.1989); *McCarthy v. Manson,* 714 F.2d 234, 237– 38 (2d. Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

May 26, 1999.

---

**11.** The Court warns Orraca that if he chooses not to withdraw his unexhausted claims and instead returns to State court to exhaust them, any federal habeas petition that he brings thereafter will be subject to the AEDPA's one-year statute of limitations, as tolled by the time state collateral motions are pending. Orraca would be well advised, therefore, to file a CPL § 440.10 motion before Judge McKenna rules on this Report and Recommendation. Alternatively, of course, Orraca can withdraw (and thus forfeit) his unexhausted claims, and this Court will then review his exhausted claims on the merits.