Brian L. BROWN, Petitioner,

v.

Rick WALKER, et al., Respondents.

No. CV–S–02–0770 PMP(PAL).

United States District Court,
D. Nevada.

Nov. 24, 2003.

Brown, Brian Lamar, High Desert State Prison, Indian Springs, NV, Pro se.

Rene L. Hulse, Nevada Attorney General's Office, Rene L. Hulse, Nevada Attorney General's Office, Las Vegas, NV, for State Of Nevada, Rick Walker, Respondents.

## ORDER

PRO, Chief Judge.

Presently before this Court is Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody (Doc. # 14), filed on March 28, 2003. Petitioner Brian L. Brown ("Brown") filed a Response to Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody and Supplemental to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody (Not Sentenced to Death) in Accordance to Federal Rules of Civil Procedure 15(d) ("Response") (Doc. # 19) on April 11, 2003. Respondents did not file a Reply.

## I. BACKGROUND

A Nevada jury convicted Brian Brown on December 2, 1996, of one count of second degree murder with the use of a deadly weapon and one count of attempted murder with the use of a deadly weapon. (Index of Exhibits in Supp. Mot. to Dismiss Pet. for Writ of Habeas Corpus, Volume I [hereinafter "Index I"], Ex. C.) Brown appealed his conviction on July 9, 1997. (*Id.*, Ex. D.) The Nevada Supreme Court dismissed his appeal on July 16, 1999 and issued a remittitur on August 11, 1999. (*Id.*, Ex. G, Ex. H.)

On June 30, 2000, Brown filed a proper person Petition for Writ of Habeas Corpus, containing fourteen grounds for relief, with the Court of the Second Judicial District of Nevada. (*Id.*, Ex. I.) The state

district court appointed counsel for Brown and gave counsel forty-five days in which to file either a supplement to Brown's petition or a Notice of Nonsupplementation. (*Id.*, Ex. J.) Meanwhile, Brown prepared a Memorandum of Points and Authorities in Support of Petition for Writ of Habeas Corpus. (*Id.*, Ex. K.) Brown also prepared and filed a Supplemental Petition for Writ of Habeas Corpus, containing grounds fifteen through eighteen. (Index in Supp. Mot. to Dismiss Pet. for Writ of Habeas Corpus, Volume II ("Index II"), Ex. L.) On September 19, 2000, Brown's attorney filed a Notice of No Supplement to the Petition for Writ of Habeas Corpus. (*Id.*, Ex. M.)

In response to Brown's petition in State court, Respondents filed an Answer to Petition for Writ of Habeas Corpus and a Motion to Dismiss Petition for Writ of Habeas Corpus. (*Id.*, Ex. O, Ex. P.) Brown's counsel filed a Response to Motion to Dismiss ("Counsel's Response") (*Id.*, Ex. R). Counsel's Response abandoned Grounds 2–4, 8–9, parts of 10 and 11, and 13. (*Id.*) Counsel's Response also noted Ground 12 had already been decided on direct appeal, and Ground 6 should be considered only in relation to other claims; Counsel's Response did not mention Grounds 15–18. (*Id.*)

Counsel's Response also incorporated by reference and as an exhibit Brown's Reply to Respondents Motion to Dismiss, a document Brown had drafted and filed on November 21, 2000. (*Id.*, Ex. Q, Ex. R.) This document argued that all of the eighteen grounds he had raised in his original and supplemental petitions should not be dismissed. (*Id.*, Ex. Q.) Brown did not mention an intent to abandon any of the eighteen claims. (*Id.*)

The Court of the Second Judicial District held an evidentiary hearing on Brown's petition. (*Id.*, Ex. U.) The State court considered three of Brown's grounds and found the others had either been abandoned or were unsupported by "any evidence or argument." (*Id.*, Ex. V.) The State court denied the three grounds it considered on the merits. (*Id.*)

Brown then appealed the denial to the Nevada Supreme Court. (*Id.*, Ex. W.) During the appeal process, Brown disagreed with his attorney's decision to present only one of his eighteen grounds on appeal and submitted a proper person Motion to Terminate Counsel of Record to the Nevada Supreme Court ("Motion to Terminate"), on October 4, 2001. (*Id.*, Ex. HH.) On October 15, 2001 the Nevada Supreme Court denied Brown's Motion to Terminate and returned his proper person documents to him unfiled, instructing him to "proceed through counsel. . . ." (*Id.*, Ex. FF.) In November, Brown again submitted a Motion to Terminate Counsel of Record to the Nevada Supreme Court. (*Id.*, Ex. HH.) This time, the Court received and filed the documents on November 20, 2001.

On March 28, 2002, the Nevada Supreme Court affirmed the judgment of the Court of the Second Judicial District denying Brown's state habeas petition. (*Id.*, Ex. JJ.) It issued a remittitur on April 23, 2002. (*Id.*, Ex. KK.)

Brown then filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 By a Person in State Custody ("Petition") with this Court. The Petition asserted eighteen grounds for relief. (*Id.*) The Petition also stated not all the grounds were exhausted. (*Id.*) The Court received the Petition on June 3, 2001, but did not file it until October 23, 2001, following the review of Brown's application to proceed *In Forma Pauperis*. (*Id.*)

On October 21, 2002, this Court entered an Order ("October Order") stating Brown "had apparently not exhausted Grounds 2, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 and 18 . . ." The October Order informed Petition-

er he had "three options for future proceedings in this case . . . .":

 (1) Petitioner may proceed with the mixed petition and have this court review the merits of both the exhausted and unexhausted grounds with the understanding that this court **cannot** grant habeas corpus relief based on the unexhausted grounds; or

 (2) Petitioner may proceed with an amended petition excluding the unexhausted grounds; or

 (3) Petitioner may voluntarily dismiss the instant petition in order to pursue state remedies regarding the unexhausted grounds.

(October Order at 2 (emphasis in original).)

Brown then filed a Notice of Complying with the Court's Order ("Notice"), choosing option number one, to proceed with a mixed petition with the understanding that unexhausted claims could not be granted. (Notice at 1.) Brown also argued the unexhausted grounds were in fact exhausted, because he had attempted to fire his attorney and argue all eighteen grounds in proper person to the Nevada Supreme Court, but could not do so when the Court denied his Motion to Terminate. (Notice at 2–3.)

On March 28, 2003, Respondents filed a Motion to Dismiss Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody (Doc. # 14) ("Motion to Dismiss"). Respondents argued that the Petition was a mixed petition, containing exhausted and unexhausted claims, and should be dismissed. (Mot. at 10.)

In his Response, Brown noted again that he had attempted to bring the unexhausted issues contained in Grounds 1–18 before the Nevada Supreme Court. (Response at 5.) Additionally, Brown argued Ground 1, which was presented as an ineffective as-

sistance of counsel claim, was exhausted because it was essentially the same ground Brown's counsel had argued to the Nevada Supreme Court presented as a denial of due process. (*Id.* at 6–8.) Brown also asked for leave to amend his Petition either to add the denial of due process claim counsel had argued before the Nevada Supreme Court on post conviction appeal or to incorporate it into Ground 1. (*Id.* at 8.)

## II. STANDARD OF REVIEW AND JURISDICTION

This Court reviews habeas petitions under 28 U.S.C. § 2254 (2003). A habeas petition is properly within the jurisdiction of the Court when it is brought by a prisoner, in custody pursuant to a conviction in state court, who alleges that his conviction and imprisonment violate the Constitution or the laws of the United States. *Id.* § 2254(a). Because Brown is imprisoned due to his conviction in a Nevada state court proceeding, this Court has jurisdiction to hear his petition.

▪ Brown must meet federal court procedural requirements; however, this Court interprets Brown's pro se filings leniently. *Ford v. Hubbard,* 330 F.3d 1086, 1098 (9th Cir.2003). "A pro se complaint, 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers.' " *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)).

## III. DISCUSSION

The Writ of Habeas Corpus embodies an ancient concept that existed in early English law and was then incorporated in the law of the United States. *See* U.S. Const., Art. I § 9, cl. 2 ("The Privilege of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the

public Safety shall require it."). *See also Felker v. Turpin,* 518 U.S. 651, 663, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (giving a brief history of the development of habeas jurisdiction in federal courts). The United States Supreme Court has viewed habeas proceedings as "a bulwark against convictions that violate 'fundamental fairness.'" *Engle v. Isaac,* 456 U.S. 107, 126, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) (quoting *Wainwright v. Sykes,* 433 U.S. 72, 97, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (Stevens, J., concurring)).

However, the Supreme Court has acknowledged the prisoner's right to petition for habeas review of his conviction is not without societal costs. *Id.* at 126–28, 102 S.Ct. 1558. Habeas petitions decrease the certainty of criminal convictions and society's faith in the accuracy of trial proceedings. *Id.* Additionally, they create friction between the federal and state judiciaries, by giving one the power to review and overturn the other. *Id.*

The exhaustion doctrine, codified in § 2254(b), was intended to lessen the tension between state and federal courts habeas review creates. In *Ex parte Royall,* the United States Supreme Court noted a federal court had "discretion as to the time and mode in which it will exert the powers conferred on it" and could deny a petition if it was still under consideration in state court. 117 U.S. 241, 251, 6 S.Ct. 734, 29 L.Ed. 868 (1886). The *Royall* court exhorted the lower courts to exercise this discretion:

> in the light of the relations existing, under our system of government, between the judicial tribunals of the Union and of the States, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution.

*Id.* In its modern application, codified by Congress in 1948, the exhaustion doctrine prohibits a federal court from granting a state prisoner's petition unless "the applicant has exhausted the remedies available in the courts of the State" or the state has either no corrective procedure or a procedure that is ineffective. 28 U.S.C. § 2254(b)(1).

In order to resolve the matters raised by Respondents' Motion to Dismiss and Brown's Response, the Court must consider several recent permutations of the exhaustion doctrine. First, Brown disagrees with Respondents' assertion that Grounds 1, 2, 7–16, and 18 are unexhausted (Response at 5); therefore, this court must perform an exhaustion analysis. Furthermore, if Brown's Ground 1 is unexhausted, this Court must consider Brown's request to amend his petition to add a new ground, called "Ground 1A" by Brown. Alternatively, if the Court determines Brown's petition is a mixed petition, the Court must consider whether to invoke § 2254(b)(2) to review the merits of Brown's entire petition. Finally, because, upon reconsideration, the Court finds that the Grounds contained in Brown's petition are not appropriate for denial on the merits under § 2254(b)(2), the Court must inform Brown of the implications of the one year limitation period of § 2244(d) and how he may act to exhaust his remaining grounds and avoid losing the chance to bring his completely exhausted petition before this Court.

## A. Exhaustion

Under the total exhaustion rule of *Rose v. Lundy,* when a federal court is presented with a mixed petition it is required to dismiss the entire petition without prejudice. 455 U.S. 509, 510, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). The petitioner then has two options: (1) to return to state court in order to satisfy the exhaustion requirement, or (2) to amend his federal

habeas petition so as to include only claims that were exhausted in the state courts. *Id.* The district court has the responsibility to provide the petitioner "with the opportunity to amend [his] mixed petition[ ] by striking [his] unexhausted claims." *Tillema v. Long,* 253 F.3d 494, 503 (9th Cir.2001) (quoting *Anthony v. Cambra,* 236 F.3d 568, 574 (9th Cir.2000)). This rule serves to "protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose,* 455 U.S. at 518, 102 S.Ct. 1198.

■ Formerly, the United States Supreme Court made clear that to satisfy the exhaustion requirement, a petitioner was required to "fairly present" his federal claims to the highest State court. *Picard v. Connor,* 404 U.S. 270, 276, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). *See also O'Sullivan v. Boerckel,* 526 U.S. 838, 844, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (affirming that, after the amendments to the habeas statute enacted by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the exhaustion requirement is still satisfied by giving state courts a *"fair* opportunity to act on [a] claim[ ].") (emphasis in original). Fair presentation of a petitioner's claims to the highest State court involves a two-part inquiry. First, the petitioner must make a "reference to a specific federal constitutional guarantee." *Gray v. Netherland,* 518 U.S. 152, 153, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996). Second, the petitioner must include "a statement of the facts entitling a petitioner to relief." *Id.*

In its interpretation of the "fair presentation" requirement, the Ninth Circuit has established that a petitioner must "specifically indicate" to the State court that his "claims [a]re based on federal law." *Lyons v. Crawford,* 232 F.3d 666, 668 (9th Cir.2000), *as amended, Lyons v. Crawford,* 247 F.3d 904 (9th Cir.2001). "[T]he petitioner must make the federal basis of the

claim explicit either by citing federal law or the decisions of federal courts, even if the federal basis is 'self-evident.' " *Id.* (quoting *Gatlin v. Madding,* 189 F.3d 882, 888 (9th Cir.1999)).

The Ninth Circuit has taken a strong stance on the explicitness requirement. In *Hiivala v. Wood,* the Circuit held that because the petitioner's arguments did not explicitly refer either to the Due Process clause of the United States Constitution, the Fourteenth Amendment to the United States Constitution, or federal case law, the petitioner did not explicitly raise his federal claims to the highest State court. 195 F.3d 1098, 1107 (9th Cir.1999). Consequently, the Circuit affirmed the district court's finding that the petitioner's claim was not exhausted. *Id.*

In addition to explicitly referencing federal law, a § 2254 petitioner must " 'describe[ ] the operative facts ... upon which his claim is based' " in order to comply with the fair presentation requirement. *Bland v. Cal. Dep't of Corr.,* 20 F.3d 1469, 1473 (1994) (quoting *Tamapua v. Shimoda,* 796 F.2d 261, 262 (9th Cir. 1986)). Adding additional facts, for example facts changing a claim that counsel was ineffective during the trial to a claim that counsel prepared ineffectively before the trial, also can result in a finding of nonexhaustion. *Cruz v. Warden of Dwight Corr. Ctr.,* 907 F.2d 665, 667–69 (7th Cir.1990).

Brown's Petition contains eighteen Grounds. They are as follows:

Ground 1: Counsel was ineffective because he failed to prepare and offer jury instructions regarding the effect of Brown's diabetes and hypoglycemia on his state of mind.

Ground 2: Erroneous and prejudicial jury instructions on 1) premeditation 2) reasonable doubt and 3) malice denied Brown a fair trial and due process.

Ground 3: The prosecutor's misstatements of fact during closing argument

denied Brown a fair trial and due process.

Ground 4: The trial court's refusal to allow evidence of specific acts by the victims denied Brown a fair trial and due process.

Ground 5: The trial court's refusal to give Brown's proposed jury instructions on self-defense denied Brown his Fifth and Sixth Amendment rights to due process, effective assistance of counsel, and fair trial.

Ground 6: The trial court's refusal to give a jury instruction regarding the prosecution's burden of proof denied Brown a fair trial and due process.

Ground 7: Brown did not receive effective assistance of counsel because his lawyer 1) recommended that Brown take a plea bargain offer; 2) failed to research a theory of defense based on a diabetic/hypoglycemic state of mind; and 3) failed to file pre-trial motions to a) dismiss the Grand Larceny charge that Brown was tried on, b) suppress the use of pretrial transcripts, and c) subpoena witnesses.

Ground 8: Brown did not receive effective assistance of counsel because his lawyer did not raise meritorious issues on direct appeal.

Ground 9: Brown did not receive effective assistance of counsel because his lawyer did not argue that Brown was under the influence of Extreme Emotional Disturbance when he shot the two victims.

Ground 10: The state court abused its discretion by binding Brown over on a count of grand larceny, without probable cause.

Ground 11: The prosecutor knew the statements that Daniel Hill made at trial were false and denied Brown a fair trial by presenting them.

Ground 12: Daniel Hill's false statements made Brown's trial unfair and denied him due process.

Ground 13: Brown did not receive effective assistance of counsel when his lawyer failed to object to the erroneous and prejudicial jury instructions described in Ground Two.

Ground 14: The prosecutor denied Brown a fair trial by referring to him as a "murderer" several times in the closing argument.

Ground 15: Brown did not receive effective assistance of counsel when his lawyer failed to object to cumulative sentences.

Ground 16: Brown's sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment.

Ground 17: Brown received ineffective assistance of counsel when his lawyer failed to move to dismiss the grand larceny charge.

Ground 18: Brown received ineffective assistance of counsel when his lawyer did not move to suppress the false testimony of prosecution witness Daniel Hill.

■ Brown raised Grounds 3–6 of the Petition before the Nevada Supreme Court on direct appeal. These Grounds are exhausted.

■ Grounds 1, 2, 7–16, and 18 did not appear in Brown's direct appeal or in the habeas appeal that his counsel filed with the Nevada Supreme Court. Additionally, although the Nevada Supreme Court stated in a footnote it considered all of the proper person documents "filed or received in" Brown's habeas appeal, the documents Brown filed or attempted to file with the Nevada Supreme Court do not describe the legal theory and operative facts of any claims. (Notice at unmarked exhibits.)[1] Instead, the documents ex-

1. Although Brown included Counsel's Response in his Motion to Terminate Counsel

plain Brown disagrees with his habeas counsel's selection of which claims to bring without describing the claims themselves. Because the Nevada Supreme Court did not consider the legal theory and operative facts of Grounds 1, 2, 7–16, and 18, these Grounds are not exhausted.

◼ Brown argues Ground 1 is exhausted because it is the same claim that he included in his first proper person habeas petition, and the arguments his counsel presented to the state courts for post-conviction relief were derived from that claim. However, this does not fulfill the exhaustion requirement because, although the factual absence of a jury instruction on the effect of Brown's hypoglycemia and diabetes is the basis of both claims, the legal theories asserted in Ground 1 and in Brown's Post-conviction appeal are different; therefore, Ground 1 is not exhausted.

**B. Amendment to Add a New Ground**

◼◼ Rule 15 of the Federal Rules of Civil Procedure applies to habeas corpus proceedings. *Anthony*, 236 F.3d at 574. Rule 15(a) allows a party to amend a pleading, and Rule 15(c) allows the amended pleading to "relate back" to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R.Civ.P. 15 (2003). The relation back provision is important because of the one year statute of limitations imposed by the AED-PA. 28 U.S.C. § 2244(d) (2003). Under Rule 15(c) a habeas petitioner may add claims to a timely filed petition even after the expiration of the statute of limitations. *Anthony*, 236 F.3d at 576.

The Ninth Circuit Court of Appeals has not articulated a test to determine when a habeas claim relates back under Rule 15(c). However, the Ninth Circuit has noted that the Rule's "central policy" is to "[ensure] the nonmoving party has sufficient notice" and that " 'litigation involving a specific factual occurrence' " provides notice. *Id.* (quoting James Wm. Moore et al., *Moore's Federal Practice* § 15.19[1] (3d ed.1999)). In situations outside the habeas corpus context, the Ninth Circuit Court of Appeals has allowed relation back when the "claim to be added will likely be proved by the 'same kind of evidence' offered in support of the original pleading." *Percy v. San Francisco Gen. Hosp.*, 841 F.2d 975, 978 (9th Cir.1988) (quoting *Rural Fire Prot. Co. v. Hepp*, 366 F.2d 355, 362 (9th Cir.1966)).

Other circuits have created a similar test that is applicable only to amendments of habeas petitions. These circuits require the amended claim to come from the "same set of facts" as the original claim. *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir.1999). A claim in an amended petition arising out of the same trial and sentencing proceeding but out of "separate conduct or a separate occurrence that is different in both time and type' " from what is described in the original petition does not relate back to the first filing date. *Davenport v. United States*, 217 F.3d 1341,

---

before the state habeas court as Exhibit D (Response at Exhibit B), it does not appear either in his Motion to Terminate Counsel before the Nevada Supreme Court, filed on November 20, 2001, or in his earlier Motion to Terminate Counsel, which the Nevada Supreme Court returned to him unfiled. (Index II, Ex. RR and Notice at unmarked exhibits.) Because Counsel's Response discusses each of Brown's first fourteen grounds and the Nevada Supreme Court opinion notes in a footnote that it has "considered all proper person documents filed or received in this matter," had Counsel's Response been included in the documents that were submitted to the Nevada Supreme Court, Grounds 1–14 would arguably be exhausted.

1344 (11th Cir.2000) (citing *United States v. Pittman*, 209 F.3d 314, 318 (4th Cir. 2000) and *Craycraft*, 167 F.3d at 457).

■ Brown's proposed amendment seeks to add Ground 1A, claiming the State district court erred in denying Brown's habeas claim that he was improperly denied a jury instruction critical to his theory of the case. This amendment relates back to the date of his original filing, because it can be proven by the same evidence and arises from the same set of facts as Ground 1 of the Petition. Both claims require Brown to prove that the trial court did not instruct the jury to consider the effect of diabetes and hypoglycemia on Brown's mental state and that the absence of such an instruction was a violation of due process. Both claims arise from the absence of such an instruction and an assertion that this absence deprived Brown of a fair trial.

In sum, this Court must consider several factors in assessing Brown's proposed Ground 1A. First, Brown is a pro se litigant, whose pleadings the Court construes liberally. Also, the claim he presses in Ground 1A grew out of the original claim he brought in his habeas petition. Additionally, because Respondents litigated the issue in Ground 1A during Brown's post-conviction appeal, lack of notice is minimal. Furthermore, Ground 1A was one of only six exhausted claims, and it is logical to expect that Brown would raise it in federal court. Finally, Respondents have not objected to Brown's request. Therefore, the Court will treat Brown's Response as a Motion to Amend his Petition and grant the same, adding Ground 1A to the eighteen other Grounds. To avoid confusion, this Court will continue to call the additional claim Ground 1A. Furthermore, the Court notes Ground 1A has been brought before the Nevada Supreme Court on post-conviction appeal and is exhausted.

## C. Denial on the Merits Under § 2254(b)(2)

The total exhaustion rule of *Rose v. Lundy* was designed to ensure that state judicial proceedings were not disrupted and that federal courts would receive one petition from a prisoner containing only exhausted claims and a complete factual record. 455 U.S. at 518–20, 102 S.Ct. 1198. However, the rule has disadvantages: an increased burden on the state judiciary as "time and resources are [ ] spent rejecting the obviously meritless unexhausted claim" and on the federal judiciary as judges review cases twice, once for exhaustion and again to examine the merits. *Rose*, 455 U.S. at 525, 527, 102 S.Ct. 1198 (Blackmun, J., concurring). In *Granberry v. Greer*, a case decided five years after *Rose*, the United States Supreme Court acknowledged some of those disadvantages and modified the total exhaustion rule. 481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987).

In *Granberry*, the United States Supreme Court considered whether the state's failure to raise exhaustion in the lower court constituted a waiver and whether, under limited circumstances, an appellate court might decide the merits of an unexhausted claim. *Id.* at 131, 107 S.Ct. 1671. The Supreme Court rejected hard and fast rules on both issues and adopted "an intermediate approach [directing] the courts of appeals to exercise discretion in each case to decide whether the administration of justice would be better served by insisting on exhaustion or by reaching the merits of the petition forthwith." *Id.*

The Supreme Court noted that appellate courts should consider comity and federalism, "the basis for the exhaustion doctrine," and additionally, justice and judicial efficiency when exercising discretion to consider the merits of an unexhausted

claim. *Id.* at 134–36, 107 S.Ct. 1671 (quoting *Ex parte Hawk*, 321 U.S. 114, 117, 64 S.Ct. 448, 88 L.Ed. 572 (1944)). Courts should "insist on complete exhaustion" when the unexhausted claim "presents an issue on which an unresolved question of fact or of state law might have an important bearing." *Id.* at 135, 107 S.Ct. 1671. However, where "it is perfectly clear that the applicant does not raise even a colorable federal claim, the interests of the petitioner, the warden, the state attorney general, the state courts, and the federal courts will all be well served ... if ... the district court denies the habeas petition, and the court of appeals affirms the judgment of the district court forthwith." *Id.*

Some courts construe the addition of § 2254(b)(2) in the amendments enacted by the AEDPA of 1996 as a codification of *Granberry's* modification of the total exhaustion rule. *See Gaylor v. Harrelson*, 962 F.Supp. 1498, 1499 (1997) (citing *Hoxsie v. Kerby*, 108 F.3d 1239, 1242–43 (10th Cir.) *cert. denied*, 522 U.S. 844, 118 S.Ct. 126, 139 L.Ed.2d 77 (1997)); *Lum v. Penarosa*, 2 F.Supp.2d 1291, 1292–93 (D.Haw. 1998); *Lambert v. Blackwell*, 134 F.3d 506, 514 (3d. Cir.1997). By adding § 2254(b)(2), the AEDPA extended to the district courts the discretion to consider the merits of an unexhausted claim. § 2254(a). The new part of the statute states "an application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state." § 2254(b)(2).

While § 2254(b)(2) unquestionably gives federal courts some discretion to consider unexhausted claims, the rule governing when a district court may invoke § 2254(b)(2) to consider the merits of an unexhausted claim is far from clear. *Lambert*, 134 F.3d at 514; *Hoxsie*, 108 F.3d at 1243; *Lum*, 2 F.Supp.2d at 1292–93; *Gaylor*, 962 F.Supp. at 1499; *Orraca v. Walk-*

*er*, 53 F.Supp.2d 605, 610 (S.D.N.Y.1999). The statute's legislative history is not helpful in this regard, although it does imply that Congress was concerned with the same issues the *Granberry* court had attempted to address:

This bill also provides that an application for a writ of habeas corpus may be denied on the merits even if it might otherwise be dismissed because the applicant has failed to exhaust state remedies. This reform will help avoid the waste of state and federal resources that now result when a prisoner presenting a hopeless petition to federal court is sent back to the state courts to exhaust state remedies. It will also help avoid potentially burdensome and protracted inquiries as to whether state remedies have been exhausted, in cases in which it is easier and quicker to reach a negative determination of the merits of a petition. This amendment does not undermine the policy of comity to state courts that underlies the exhaustion requirement, since the federal habeas court would only be permitted to deny an unexhausted claim.

H.R.Rep. No. 104–23, at 9–10 (1995).

While the Ninth Circuit has not established a standard defining when to exercise discretion under § 2254(b)(2), other Circuits have come to varying conclusions. The Third Circuit interpreted § 2254(b)(2) as a codification of *Granberry* and used *Granberry's* language, allowing courts to consider the merits in order to deny an unexhausted claim when it is "perfectly clear that the applicant does not raise even a colorable claim." *Lambert*, 134 F.3d at 514–15. *See also Gaylor*, 962 F.Supp. at 1500 ("the test is whether it is 'perfectly clear' that the petitioner has failed to state 'even a colorable claim.'"); *Lum*, 2 F.Supp.2d at 1292 (denial of an unexhausted claim is appropriate "when it is 'perfect-

ly clear' that the petition fails to state 'even a colorable claim.' ") (quoting *Gaylor*, 962 F.Supp. at 1500). The Tenth Circuit also looked to *Granberry* but used another portion of the opinion's language to formulate a rule allowing denial on the merits when the court is "convinced petitioner's claims have no merit." 108 F.3d at 1243. Several district courts in the Second Circuit have used the phrase "patently frivolous" to describe cases that could be denied under § 2254(b)(2). *See Colon v. Johnson*, 19 F.Supp.2d 112, 120, 122 (S.D.N.Y.1998); *Hogan v. Ward*, 998 F.Supp. 290, 293 (W.D.N.Y.1998); *Edkin v. Travis*, 969 F.Supp. 139, 142 n. 1 (W.D.N.Y.1997). However, in an opinion that was withdrawn when the court determined the claim was procedurally barred, the Second Circuit rejected the patently frivolous language in favor of a standard based on the legislative history, allowing courts to deny a "hopeless" claim on the merits. *Jones v. Senkowski*, No. 00–2145 2002 U.S.App. Lexis 2669, at \*17–18 (2nd Cir. Feb. 18, 2002), *vacated, opinion withdrawn, Jones v. Senkowski*, 42 Fed.Appx. 485 (2nd Cir.2002).

Although the courts above articulate the standard differently, their discussion regarding the standard has several themes in common. First, some courts admit that there may be no functional difference between "patently frivolous" and failing to state a "colorable claim." *See Orraca*, 53 F.Supp.2d at 612 n. 9 ("Whatever the stated standard used by other decisions, the Court strongly suspects that the real standard being used by the federal courts is whether it is easier to dismiss as a mixed petition or easier to reach the merits of the unexhausted claim.") (citations omitted); *Norman v. New York*, No. 97–8051, 1999 WL 983869, at \*5 n. 6, 1999 U.S. Dist. LEXIS 16762, at \*17 n. 6 (S.D.N.Y. Oct. 26, 1999) ("Although 'patently frivolous' and 'perfectly clear' are linguistically distinct, there is little practical difference between them. If a claim is 'patently frivolous,' it will be 'perfectly clear' that no relief can be granted on the basis of it. Similarly, if after a quick reading of the record it is 'perfectly clear' that no relief can be granted on the basis of a particular claim, that will be because the claim is 'patently frivolous.' "). Additionally, most courts weigh the four interests mentioned in *Granberry*, federalism, comity, judicial efficiency, and justice. *See Lambert*, 134 F.3d at 514; *Lum*, 2 F.Supp.2d at 1293 (when a claim is "clearly without merit ... comity and federalism ... are better served if the federal court addresses the merits ... rather than sending the petitioner back to the state courts on a futile quest to exhaust ultimately meritless claims."); *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir.1998) ("comity, federalism and judicial efficiency") (citing *Paradis v. Arave*, 130 F.3d 385, 390 (9th Cir.1997)) (unexhausted claims may be considered on the merits "if the interest of comity, federalism, and justice would be served."). Finally, courts examining this issue consider the exercise of § 2254(b)(2) discretion to be a serious matter appropriate in only a narrow class of cases. *See Gaylor*, 962 F.Supp. at 1500 ("review[ ] performed pursuant to § 2254(b)(2) ... requires only a cursory examination of petitioner's claims. If this brief examination arouses the slightest suspicion that the claims have merit" then the use of § 2254(b)(2) discretion is not appropriate.); *Jones*, 2002 U.S.App. Lexis 2669, at \*22 ("Our construction [of 2254(b)(2) ] is consistent with an understanding of the considerable consequences of dismissing a petition on the merits rather than dismissing it without prejudice. As the Supreme Court held in *Slack v. McDaniel*, [529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)] '[a] petition filed after a mixed petition has been dismissed under *Rose v. Lundy* before the district court adjudicated any claims is to

be treated as 'any other first petition' and is not a second or successive petition' which may be dismissed for abuse of the writ.") (internal citation omitted).

■ This Court elects to follow the standard set by the district court in *Lum*, the only other Ninth Circuit case addressing this issue,[2] which allows a court to exercise discretion under § 2254(b)(2) when it is clear that the petitioner fails to state a colorable claim; however, because there seems to be so little difference between this standard and "patently frivolous," it is important to discuss the meaning this Court attaches to the phrase "no colorable claim." In this the Court is guided by the four interests already mentioned: justice, judicial efficiency, comity, and federalism.

The exercise of § 2254(b)(2) discretion to deny has serious consequences for the petitioner, but it does not offend the interests of comity or federalism, H.R.Rep. No. 104–23, at 9–10. Because the use of § 2254(b)(2) has serious consequences, the rule determining when to invoke it should balance the other two *Granberry* interests, justice and judicial efficiency, to delineate a narrow class of cases where denial on the merits is appropriate.

Both of these interests are served by a standard that stresses a relatively quick examination of the petition and a search for flaws that are apparent on the face of the claim. *See Gaylor*, 962 F.Supp. at 1500 (court should dismiss without preju-

dice if "only a cursory examination of [petitioner's] claims ... arouses the slightest suspicion that the claims have merit"); *Orraca*, 53 F.Supp.2d at 612 (dismissing petition where three claims had "not been addressed in state courts and... the parties will need to make a record as to some of the claims"). Additionally, both the wording of the statute and the interest of judicial efficiency support the application of § 2254(b)(2) discretion only when it facilitates a final disposition of the petition. *Moore v. Schoeman*, 288 F.3d 1231, 1235–36 (10th Cir.2002) (a hybrid approach denying some unexhausted claims on the merits and dismissing some to be exhausted in state court is not authorized by the statute).

■ If this Court is to exercise § 2254(b)(2) discretion, it must be perfectly clear that none of the unexhausted claims in Brown's Petition states a colorable claim. The Court finds there are too many claims and the factual record is too shallow for this Court to determine from the face of the Petition that denying all thirteen claims would balance the interest of justice and judicial efficiency. Therefore, after reviewing Brown's unexhausted claims, the Court declines to exercise discretion to deny them on the merits.

## D. One Year Statute of Limitations

The AEDPA also added § 2244(d) to federal habeas law, creating a one year limitation period in which to file petitions.

---

2. *Lum* noted that an unpublished Ninth Circuit opinion that had considered the merits of an unexhausted claim. *Lum*, 2 F.Supp.2d at 1292 n. 2 (citing *White v. Wood*, No. 97–35650, 1998 WL 121580, at *1, 1998 U.S.App. LEXIS 5322, at *2 (March 10, 1998)). Since *Lum* there have been other similar unpublished Ninth Circuit opinions. *See Smith v. Lindsay*, No. 98–55954, 1999 WL 974185, at *1, 1999 U.S.App. LEXIS 26894, at *2 (October 22, 1999); *Breedlove v. Wood*, 40 Fed. Appx. 600, 601 (9th Cir.2002) ("Under 28

U.S.C. § 2254(b)(2), a district court may deny a habeas petition on its merits even if the petitioner has not exhausted his state remedies 'if it is perfectly clear that the applicant does not raise even a colorable federal claim.' ") (quoting *Lambert*, 134 F.3d at 515). Of course under Ninth Circuit Rule 36–3 these cases are not precedential and cannot be cited for that purpose. Nonetheless, this Court finds the reasoning of Chief Judge David Ezra in *Lum* to be persuasive.

28 U.S.C. § 2244(d) (2003). The AEDPA and the one year limitations period are applicable to all petitions filed after April 24, 1996, the date the AEDPA became effective. *Gill v. Ayers,* 342 F.3d 911, 917 (9th Cir.2003) (citing *Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)).

The one year period begins to run on "the date on which the judgment became final by the conclusion of direct review...." § 2244(d)(1)(A) (2003). But the limitation period does not run while "a properly filed application for State post-conviction or other collateral review... is pending." § 2244(d)(2). However, federal habeas review is not "other collateral review" and filing a federal habeas petition does not toll the statute. *Duncan v. Walker,* 533 U.S. 167, 181–82, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001).

 Several Ninth Circuit rules govern the calculation of the one year period. While the statute begins to run at the "conclusion of direct review," the period of "direct review" includes the ninety days "within which a petitioner can file a petition for writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition." *Bowen v. Roe,* 188 F.3d 1157, 1158–59 (9th Cir.1999). Additionally, the statute is "not tolled from the time a final decision is issued on direct state appeal [to] the time the first state collateral challenge is filed because there is no case 'pending' during that interval." *Nino v. Galaza,* 183 F.3d 1003, 1006 (9th Cir.1999). However, the statute is tolled during any intervals between state post-conviction proceedings as long as the petitioner is "attempting through proper use of state court procedures, to exhaust state court remedies with regard to a particular post-conviction application." *Id.* at 1005 (quoting *Barnett v. Lemaster,* 167 F.3d 1321, 1323 (10th Cir.1999)).

 Although a petition that is filed after the expiration of the one year period is time-barred, it is not beyond the jurisdiction of the court. *Calderon v. United States Dist. Court for the Cent. Dist. of Cal.,* 128 F.3d 1283, 1288–89 (9th Cir.1997), *rev'd on other grounds,* 163 F.3d 530 (1998). A court may consider a petition if it determines the statute should be equitably tolled. *Id.* Equitable tolling is appropriate when extraordinary circumstances beyond the prisoner's control have prevented him from filing on time. *Miles v. Prunty,* 187 F.3d 1104, 1107 (9th Cir.1999). Additionally, it is not clear that the Ninth Circuit would find that the running of the statute on a timely petition while it is pending in federal court constitutes extraordinary circumstances. *See Fail v. Hubbard,* 272 F.3d 1133, 1136 (9th Cir. 2001) ("Applying our law, we must conclude that equitable tolling is not warranted in cases ... where a petitioner is affected only by routine delay...."), *amended by Fail v. Hubbard,* 315 F.3d 1059, 1062 (9th Cir.2002) (declining to reach the question of whether a pending petition can be equitably tolled but observing "[t]his is not to say that a petition can never demonstrate that district court delay—including delay in dealing with an earlier petition that is ultimately dismissed for failure to exhaust—may constitute an 'extraordinary circumstance' as that determination is 'highly fact dependent.'") (citation omitted).

Brown filed his Petition on June 3, 2002. Because he filed his petition after April 24, 1996, the one year limitations period of § 2244(d) applies.

 Brown's one year limitation period has now expired and any new petition that Brown brings will be time-barred unless he can show extraordinary circumstances beyond his control are the reason for the delay. Brown's direct appeal concluded on

October 14, 1999, ninety days after the Nevada Supreme Court dismissed his direct appeal. When he filed his state post conviction appeal on June 30, 2000, he had one hundred and six days remaining. Because he filed his petition with this Court on June 3, 2002, sixty-seven days after the Nevada Supreme Court affirmed his conviction on March 28, 2002, his petition is timely. However, under *Duncan*, the filing of this petition did not stop the running of the statute and it expired on July 12, 2002.

### E. Petitioner's Election

■ *Rose v. Lundy* held that when a Court determines a habeas petition contains exhausted and unexhausted claims it must give petitioner a choice of dismissing the unexhausted claims and proceeding with the exhausted ones or dismissing the entire petition without prejudice and filing a new petition when all the claims were exhausted. *Rose*, 455 U.S. at 514, 102 S.Ct. 1198. However, *Rose* was decided in 1982, fourteen years before the AEDPA placed a one year time limit on filing a habeas appeal in federal court.

Since the passage of the AEDPA, the Ninth Circuit Court of Appeals has decided several cases in which district courts gave petitioners the choices dictated by *Rose* without giving them adequate information as to the consequences of those choices. *See Brambles v. Duncan*, 330 F.3d 1197 (9th Cir.2003); *Kelly v. Small*, 315 F.3d 1063 (9th Cir.2003); *Ford*, 330 F.3d at 1097. In response, the Ninth Circuit has encouraged the district courts to provide more information to petitioners. *Ford*, 330 F.3d at 1093. First, courts should inform petitioners when the statute of limitations has already run on their petition and should notify them that an outright dismissal of the petition, even "without prejudice," will result in the petition being time-barred unless the petitioner can prove the statute should be equitably tolled. *Id.* Second, courts should notify petitioners that they may request a stay of their petition if they amend their petitions by dismissing the unexhausted claims. *Id.* After all claims are exhausted, petitioners can move to amend the original petition to add the now exhausted claims, which will relate back to the original filing date under Rule 15(c). *Id.*

Consequently this Court informs Brown that he may choose from the three following options:

1. Inform the Court in a sworn declaration signed by Brown himself that he wishes to dismiss, without prejudice, Grounds 1, 2, 7–16, and 18 ("unexhausted claims"), and wishes instead to proceed only on the remaining grounds for relief; or

2. Inform the Court in a sworn declaration signed by Brown himself that he wishes to dismiss his entire petition without prejudice in order to return to the state court to exhaust his state court remedies on the unexhausted claims; or

3. Inform the Court in a sworn declaration signed by Brown himself that he wishes to dismiss the unexhausted claims without prejudice, stay this action while he returns to state court within sixty (60) days to exhaust the unexhausted claims, and then later move to reopen this matter and amend the petition to add the deleted claims once they have been fully exhausted in the state courts.

Brown must be mindful that although Options 1 and 2 use the term "without prejudice," a term which generally denotes an ability to bring the dismissed claims back to court at a later date, this is not the case here. In fact the dismissal of the unexhausted claims does prejudice Brown's ability to bring them since any second petition would be barred by one year limitations period imposed by

§ 2244(d). If Brown wishes further federal review of his unexhausted claims, he may choose Option 3, dismissing only the unexhausted claims, requesting a stay and then moving to reopen the petition once his claims are exhausted. If Brown wishes to renounce his unexhausted claims and to proceed with his remaining claims, he may choose Option 1.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody (Doc. # 14) is hereby GRANTED in part with respect to Grounds 1, 2, 7–16, and 18 and DENIED in part with respect to Grounds 3–6, 17, and 1A.

IT IS FURTHER ORDERED Brown's Motion to Amend his Petition to include the exhausted Ground 1A (Doc. # 19) is GRANTED. To avoid confusion the Court will continue to refer to this Ground by Petitioner's name, Ground 1A.

IT IS FURTHER ORDERED Petitioner shall have thirty (30) days from the date of entry of this Order to do one of the following:

Option 1: Inform the Court in a sworn declaration signed by Brown himself that he wishes to dismiss, without prejudice, Grounds 1, 2, 7–16, and 18 ("unexhausted claims"), and wishes instead to proceed only on the remaining grounds for relief; or

Option 2: Inform the Court in a sworn declaration signed by Brown himself that he wishes to dismiss his entire Petition without prejudice in order to return to the state court to exhaust his state court remedies on the unexhausted claims; or

Option 3: Inform the Court in a sworn declaration signed by Brown himself that he wishes to dismiss the unexhausted claims without prejudice, stay this action while he returns to state court within sixty (60) days to exhaust the unexhausted claims, and then later move to reopen this matter and amend the Petition to add the deleted claims once they have been fully exhausted in the state courts.

If this action is stayed under Option 3, the Court will administratively close the action, without a final judgment, until such time the Court grants a motion to reopen the action, under the same case number, following upon exhaustion of state court remedies as to all claims.

IT IS FURTHER ORDERED if Brown does not respond to this Order within thirty (30) days from the date of entry of this Order, the Court may dismiss this Petition, without further notice. Dismissal will be "without prejudice," but petitioner is informed, as above, that the one year time limitation under § 2244(d) has expired and a later action will be time-barred absent equitable tolling. Additionally Brown is cautioned that equitable tolling based on the presence of this action on a federal court's docket may not be available.

IT IS FURTHER ORDERED if Brown files a sworn declaration electing to proceed forward at this time with the exhausted claims, Grounds 3–6, 17, and 1A under option (1) above, Respondents shall file an answer to the exhausted claims within thirty (30) days after Brown serves his declaration and Brown thereafter shall have twenty (20) days after service of the respondents' answer to file a traverse.